## ERROR IN SUSTAINING OBJECTION TO HYPOTHETICAL QUESTION.

Circuit Court of Cuyahoga County.

AGNES L. HIXSON V. JAMES W. RABE.

Decided, April 15, 1907.

*Evidence—Witness—Recalling Out of Order—Abuse of Discretion—Hypothetical Question—Opinion Evidence.*

1. It is an abuse of discretion to refuse to permit a witness to be recalled for the purpose of re-examination on matters she has already testified to, where her original answers are ambiguous and it is desired to make them definite, if possible, so as to lay the ground for putting an hypothetical question to an expert witness.

2. Upon the putting of a proper hypothetical question to a medical expert witness the court, before passing upon objections to the question said to the witness: "Could you answer that question, if under the law it were competent?" to which the witness replied: "It would be a very hard question to answer." Whereupon counsel asked: "Have you an opinion—could you give an opinion, that is the question," to which the witness replied: "I could possibly give my own personal opinion," whereupon the court sustained the objection to the hypothetical question, not only as to this witness, but as to other expert witnesses, to whom it was afterwards put. *Held:* error.

*A. J. Wilhelm* and *Grant & Sieber,* for plaintiff in error.
*Allen, Waters, Young & Andress, contra.*

MARVIN, J.; HENRY, J., concurs; WINCH, J., dissents.

The parties here are as they were in the court below. Suit was brought by the plaintiff against the defendant, charging that on the 14th of January, 1905, at about 7:30 P. M. she fell upon the ice on a sidewalk in the city of Akron, and that her weight came upon her hand in such wise as to cause a fracture near the wrist, which is called a "colles fracture"; that she employed the defendant, who is a physician, to attend her on account of this injury to her arm; that he did attend her and undertook the management and care of her injury; that he did

it carelessly and unskillfully, setting out the details in which she says there was such want of care and skill as should have been exercised, and that as a result, her wrist and hand became permanently disabled, and she prays for damages.

The defendant admits that she received the injury, and that he undertook her treatment, but denies that there was any want of skill or proper care, or that she has suffered injury by reason of any failure on his part to perform his whole duty.

The fact is that the doctor first adjusted the broken parts of bone in such wise as he thought and, we think, from the evidence, was proper. He then placed bandages and wooden splints upon the arm in such wise, as from the evidence, we think, was proper. The accident happened on Saturday evening. The Tuesday following the doctor put what is called a plaster of Paris cast upon the arm, extending from a point below the elbow to some place upon the hand. The plaintiff herself testifies that it came to "the first of the fingers." And this cast was left upon the arm for five and a half weeks. The doctor did not call upon her or do anything further for her arm, though she called him twice by telephone, until five and a half weeks after the cast was put on, when he removed it, and her fingers are stiffened and the hand stiffened; the claim on the part of the plaintiff being that this resulted from improper treatment, and especially from the improper way in which the hand was left in this cast.

Medical evidence was introduced tending to show that a proper treatment of a case of this kind would be to have a "passive motion" of the fingers begun very early after the injury, and continued to some extent all the way through. By "passive motion," it is explained is meant that either the patient with the other hand should move the fingers back and forth, or that some other person should so move them. The plaintiff testified that by reason of the way the cast was put upon her hand it was impossible to have this passive motion.

Counsel for the plaintiff having examined the plaintiff herself and other witnesses, including two medical men, a motion was made to direct a verdict for the defendant. Thereupon the

plaintiff asked leave to re-open the case and to ask further questions of the medical witnesses, or at any rate of one of the medical witnesses, and he then called Dr. Cauffield, who had already been examined and the record shows the following took place:

"Q.   Doctor, assuming that the plaintiff's hand was placed in a plaster cast extending from the elbow to the tips of the fingers.

"THE COURT:   I beg your pardon, Senator, I don't think there is any such evidence.   We might as well settle that right here. It is 'down to the first of the fingers,' is the language of and the testimony of the plaintiff.   The court just looked it up, it is fresh in his mind—'Down to the first of the fingers' is the language of the witness.

"MR. SIEBER:   Then we will say to the—

"THE COURT:   The court just looked it up to be certain about it.

"MR. SIEBER:   If Your Honor please, then I will have to ask for the privilege of putting on the plaintiff to ask her one question.

"MR. WATERS (who represented the defendant) : I object to that. I do not believe in patching up testimony in this way. The plaintiff spoke and deliberately spoke the truth.

"THE COURT:   In view of the answer given I think I will let the answer stand as it is.

"MR. SIEBER:   If Your Honor please, I think that the record is not right in that respect.   I do not want to say anything in front of the jury here.

"THE COURT:   The jury may be excused a moment.

"Thereupon the jury retired.

"THE COURT:   I think I will not permit the recalling of the plaintiff on that matter.

"MR. SIEBER:   I except, and I expect that the witness would testify, if it please Your Honor, that the cast was placed upon the arm and hand extending from pretty near the elbow to the ends of the fingers and thumb, of course, including the thumb. If Your Honor will not permit that, there is no use in putting the question, and in my judgment, Your Honor, it would result in a miscarriage of justice.   I do not think Your Honor wishes that.

"THE COURT:   No, I think it would be a great prejudice—an unwarranted prejudice, and this court could not justify it in view of the plaintiff's own testimony, and from the very fact that counsel did not press the matter farther, except as to the hand being in, would tend to show at any rate that counsel understood it exactly as the court.

"MR. SIEBER:   Your Honor please.   *   *   *

"THE COURT: I have ruled on that and we will not spend any more time on it."

Other proceedings show the court took the position indicated in what has already been quoted.

In this we think the court erred. The discretion of the court as to the admission of evidence, after the plaintiff had testified, having been exercised to the extent of allowing the medical witness to be recalled, in view of what it was stated it was expected the plaintiff would testify to, the court should have permitted the plaintiff to be recalled. We think there was sufficient indefiniteness in the answer given by the witness, that the cast came down to "the first of the fingers," and her statement that because of the way in which the cast was on her hand there could not be the passive motion of the fingers, to justify the court in allowing this witness to be recalled and the court should have permitted this witness to be recalled.

Counsel for plaintiff then inquired of Dr. Cauffield as follows:

"Q. Doctor, suppose that this arm and hand were dressed in such a manner that passive motion was not possible, by being placed in a plaster of Paris cast, and left there for the period of five and a half weeks, without attention, what do you say, in your judgment as to whether or not, leaving the hand in that condition for the period of five and a half weeks, contributed to the stiffness that you now find in the plaintiff's hand?"

This was objected to.

"THE COURT: Before I pass it let me ask the doctor this question:

"Q. Could you answer that question, if under the law it were competent? A. It would be a very hard question to answer.

"MR. SIEBER: Have you an opinion—could you give an opinion, that is the question? A. I could possibly give my own personal opinion.

"THE COURT: I will sustain the objection to the form of the question."

The counsel for the plaintiff here stated, that if permitted he expected the witness would answer, that leaving the splints on

in that condition for that length of time would contribute to the stiffness that he now finds in the plaintiff's hand and fingers.

Another question of like import followed, and objection to it was sustained, and exception taken.

In this we think there was error.

Following these, other questions of like import were asked of Dr. Cauffield, and Dr. Fouser was also called, and similar questions asked of him, objection to which were sustained.

In this we think the court erred, and the court erred in directing the jury to return a verdict for the defendant.

Several of the hypothetical questions put to both Dr. Cauffield and Dr. Fouser, objection to which were sustained, were within the description of the treatment of the case as described by the plaintiff, and answers should have been permitted thereto, and the plaintiff herself should have been given an opportunity to say, so that there could have been no misunderstanding about it, to what point on her hand the plaster cast reached, and for this error the judgment is reversed and the case remanded to the court of common pleas for new trial.

The presiding judge does not concur in the conclusion reached in this case.